I. W. MORRISON ET AL. v. C. C. MORRISON ET AL.

Decided June 2, 1906.

**1.—Gift or Advancement—Presumption—Evidence.**

In the absence of a will or of circumstances sufficient to show otherwise a gift of money by a parent to a child is presumed to be an advancement.

**2.—Same.**

Evidence considered, and held to show an intention on the part of an intestate to give to one of her children an amount of money in excess of the

interest of such child in her estate, but no intention that such child should retain the money so given and share equally with the other heirs in the remainder of the estate.

Appeal from the District Court of Cooke County. Tried below before Hon. D. E. Barrett.

*Davis & Thomason*, for appellants.—The court erred in not holding that the defendant C. C. Morrison should be charged with the money received from his mother, and applied by him towards the payment of the vendor's lien upon his homestead, and made to account therefor as an advancement, and in permitting the said C. C. Morrison to share equally with his brothers and sisters and their descendants in the remainder of his mother's estate. Rev. Stats., art. 1694; Lott v. Kaiser, 61 Texas, 668; Woessner v. Wells, 28 S. W. Rep., 249; Williams on Executors, vol. 2, p. 1274; Hatch v. Straight (Conn.), 8 Am. Dec., 152; Grattan v. Grattan (Ill.), 65 Am. Dec., 726; Goodwin v. Parnell (Ark.), 65 S. W. Rep., 427; Nichols v. King (Ky.), 68 S. W. Rep., 133; Reynolds v. Reynolds (Ky.), 18 S. W. Rep., 517; Steele v. Friarson (Tenn.), 3 S. W. Rep., 652; "Cyc" vol. 14, p. 162, 169.

*Culp & Giddings*, for appellees.—The question whether a transaction between parent and child is to be treated as an advancement or as an absolute gift is one of fact, depending upon the intention of the parent. Any presumption that it is an advancement may be rebutted by evidence showing that it was intended as an absolute gift. Sparks v. Spence, 40 Texas, 694; Gunn v. Thurston, 32 S. W. Rep., 654; 1 Am. & Eng. Ency. of Law, 771-776; Bay v. Cook, 31 Ill., 336; Duling v. Johnson, 32 Ind., 155; Creed v. Lancaster Bank, 1 Ohio St. Rep., 1; Clements v. Hood, 57 Ala., 463.

CONNER, CHIEF JUSTICE.—Appellants I. W. Morrison, Thomas H. Morrison, H. A. Morrison and Jane A. Minnie, sons and daughter of Mrs. N. A. Morrison, deceased, joined by the children of a Mrs. Hemphill and a Mrs. Oller, also daughters of the deceased, instituted this suit in the District Court of Cooke County against the appellee C. C. Morrison, the remaining child of Mrs. N. A. Morrison, to recover an interest in the estate of the deceased and to charge as against appellee C. C. Morrison and his wife, also joined in the suit, the sum of nine hundred dollars, which it was alleged appellee C. C. Morrison had used in paying a vendor's lien upon his homestead. The trial, which was before the court, resulted in a judgment in favor of appellants for the sum of $81.33, which had been tendered by appellee and was in the hands of the clerk, from which judgment an appeal has been prosecuted.

The sole question presented is, whether the judgment is supported by the facts. It is undisputed that the deceased, who was a widow eighty-four years of age, sold her farm in Cooke County on the 26th day of June, 1905, for the sum of $3,066.65 in cash. This farm constituted her entire estate and was paid for by the purchaser in a check for the amount stated on one of the national banks of the city of Gainesville. After mutations not necessary to notice here, appellee had this amount placed

to his credit upon the books of another one of the banks in said city, and on July 27, 1905, drew therefrom the sum of $900, with which, together with some $300 of his own money, he discharged a debt secured by vendor's lien upon his homestead. On the same day he also withdrew the further sum of $166.65, which appellee C. C. Morrison testifies he gave to his mother, but which (save the amount tendered to appellants in court) he testifies was expended in the payment of her funeral expenses.

Six-sevenths of the remaining $2,000 of the fund appellee afterwards divided among his said brothers and other heirs of the deceased, himself retaining one-seventh. It further appears that Mrs. N. A. Morrison, the mother, who was a resident of Cooke County, died intestate on the 29th day of July, 1905, owing no debts, and that there has never been any administration upon her estate, nor any necessity therefor. Mrs. Zulah Morrison, the daughter-in-law of the defendant C. C. Morrison, testified: "My husband and I stayed at C. C. Morrison's on the night of the 26th of July. We sat up with Grandma Morrison. I just happened into the room when they brought the check to her to sign. My husband had already written the check. Grandma Morrison was in bed at the time. We propped her up in bed to sign the check. I heard her tell Mr. Morrison (C. C.) to pay his land notes off. I saw her sign the check. She said she thought she would get well, and be able to go west to see her grandchildren out there. The check was signed before breakfast. C. C. Morrison propped her up in bed, and she signed the check. Sometime during the morning on which she signed the check, I heard her tell Mr. C. C. Morrison to pay his land out. That was all I heard her say. I did not hear her say what she wanted done with the balance of the money."

Luther Morrison, the husband of Mrs. Zulah Morrison, testified:

"I saw Mrs. N. A. Morrison sign the check for three thousand and sixty-six dollars and sixty-five cents. She was sitting in the bed propped up at the time. Grandma said she wanted C. C. Morrison to pay his place out, and to put one thousand dollars in the Whitesboro Bank, and one thousand dollars in the Sherman Bank, and bring her the balance. She said for him to pay nine hundred dollars on his place and bring her one hundred and sixty-five dollars. She said be sure and pay your place out. I believe I am going to get well, but if I should die, you would not get it, and I have given you the money and want you to have it."

The question presented is, in substance, whether under the foregoing facts and some other evidence hereinafter referred to, appellee C. C. Morrison was entitled to retain the nine hundred dollars given to him by his mother and also to receive a distributive share of one-seventh of the remainder of his deceased mother's estate. We think not, and that the court below erred in so finding and adjudging.

Revised Statutes, article 1694, provides that "where any of the children of a person dying intestate, or their issue, shall have received from such intestate, in his lifetime any real, personal or mixed estate by way of advancement, and shall choose to come into the partition and distribution of the estate with the other distributees, such advancement shall be brought into hotchpotch with the whole estate, and such party returning such advancement shall thereupon be entitled to his proper portion

of the whole estate; provided, that it shall be sufficient to account for the value of the property so brought into hotchpotch åt the time it was advanced." If, therefore, the nine hundred dollars from his mother's estate was received by appellee C. C. Morrison "by way of advancement," he must, before being entitled to participate with other heirs in the distribution of the entire estate, return the same that it may be brought into hotchpotch with the whole estate. It hence becomes important to determine from the evidence whether appellee C. C. Morrison received said nine hundred dollars by way of advancement within the meaning of the statute, or, as appellees insist, as an "absolute gift." We think it clear from the authorities that in the absence of circumstances showing a contrary intention, a gift by a parent to a child of money, such as shown in this case, is presumed to be an advancement. (See Lott v. Kaifer, 61 Texas, 668; Woessner v. Wells, 28 S. W. Rep., 249; Williams on Executors, vol. 2, p. 1274; Richenback v. Zimmerman, 38 Am. Rep., 37; Goodman v. Parnell, 65 S. W. Rep., 427; Nichols v. King, 60 S. W. Rep., 133; Reynolds v. Reynolds, 18 S. W. Rep., 517; Steele v. Friarson, 3 S. W. Rep., 652; Cyc., vol. 14, pp. 162, 169.) During life, by proper transfer or will a person may dispose of his property as he pleases. He may thus disinherit or prefer one child above another. But in the absence of a will, and in the absence of circumstances sufficient to show otherwise, the presumption referred to obtains. The presumption as well as the statute quoted, tends to produce, as near as may be, equality in the distribution of the estate of an intestate and is evidently equitable. The utmost effect that we think can be given to the evidence in his case is to hold that Mrs. N. A. Morrison made a gift of the nine hundred dollars to her son C. C. Morrison and that to this extent she intended to prefer him over her other children. But it does not follow from this that she intended that C. C. Morrison should also receive a distributive share of the remainder of her estate. She left no will so declaring, nor is there other evidence of such effect. The nine hundred dollars was more than appellee C. C. Morrison's proper portion of his mother's entire estate. To this extent he was preferred. Beyond this we do not think he should be permitted to claim, in the absence of more convincing proof, that his deceased parent so intended. The gift is not inconsistent with the presumption indulged, and the several letters of the deceased referring to her son I. W. Morrison in unkind terms, upon which appellees rely, were in answer to letters written by appellee C. C. Morrison, which were not produced, and in our judgment fall far short of showing a settled purpose on the part of the deceased mother to deprive her son I. W. Morrison of any part of her estate to which he might under the law be entitled, and as to her other children the record discloses not even a temporary absence of a mother's tender regard.

We conclude that the court erred in its finding and judgment to the effect that appellee, without return of the nine hundred dollars received by him, was entitled to participate in a distribution of the remainder of the estate. The judgment will therefore be reversed and here rendered for appellant against appellee C. C. Morrison for the one-seventh of the $2,000 of his mother's estate retained by him, namely, the sum of two hundred and eighty-five and five-sevenths dollars ($285 5-7), with in-

terest thereon from Mrs. Morrison's death, July 29, 1905, at the legal rate, together with all costs of this court and of the court below, it being further adjudged that the said sum of $81.33 in the hands of the clerk of·the trial court be paid to appellants and which, together with the principal sum herein adjudged against appellee C. C. Morrison, shall be partitioned among appellants in their proper proportion.

*Reversed and rendered.*

Writ of error refused.