**BAKER et al. v. WALKER et al.**

No. 13270.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 29, 1935.

Rehearing Denied Jan. 17, 1936.

George M. Hopkins, of Denton, for plaintiffs in error.

A. Q. Mustain, of Aubrey, and Speer & Minor, of Denton, for defendants in error.

MARTIN, Justice.

This suit was between heirs and assignees of heirs of certain property in Denton county, Tex., for partition and adjustment of their respective equities in the estate of J. E. Daugherty and Rachel Daugherty, deceased.

Rachel Daugherty died in the year 1900 intestate, but the property in question was community between her and her husband, J. E. Daugherty. They had nine children. J. E. Daugherty died November 7, 1925, and left a written will and codicil. This will was probated January 19, 1926. This will provided that certain advancements made to named heirs should be taken into account, and it was shown in the pleadings and proof that certain other advancements were also made by him after the execution of the will.

Before entering an inventory and appraisement of the estate, the heirs executed a written agreement to the effect that all such advancements as were enumerated and agreed to in the instrument were made out of the estate of himself, J. E. Daugherty, and "out of the community estate belonging to him and his deceased wife, who predeceased him."

Based upon this instrument, the probate court received and approved said inventory and appraisement on February 9, 1926. A recitation in the court record was "the said J. E. Daugherty, during his lifetime and at various times out of the common property belonging to himself and his said deceased wife, advanced money to his children and to the beneficiaries under his will."

Thereafter the executor administered the estate under the terms of the will, making partial distribution to the beneficiaries, and a final report was made and was approved on April 28, 1928, and in the order of approval the agreement between the heirs was referred to and the advancements, as designated in such agreement, were enumerated and listed as in the inventory and appraisement.

The probate court thereupon determined that the property belonged to the nine children of the deceased, two of whom, L. J. Daugherty and A. J. Daugherty, had died leaving children to whom their respective interests descended. In this order of the probate court, Ed Daugherty was to receive one-ninth of the estate, charged with advancements in the sum of $2,503.22, and W. I. Daugherty received one-ninth charged with advancements in the sum of $696.58. By constable's deeds, dated November 18, 1933, and June 5, 1934, plaintiffs in error acquired the interest of W. I. Daugherty

in all the land and the interest of Ed Daugherty in the larger or 264-acre tract.

Plaintiffs in error, Baker and Hopkins, who acquired the interests of W. I. Daugherty and Ed Daugherty through judicial sales, claim that they are not chargeable with advances as out of the community estate.

From an adverse judgment on trial to the court they bring the case to this court by writ of error.

The only issue before this court is whether or not the interests obtained by purchase by Baker and Hopkins are properly chargeable with the advancements made to W. I. and Ed Daugherty, as admitted by them in the instrument executed in February, 1926, which instrument was not recorded, but left for safe-keeping in the office of attorneys handling the matter of probating the will of the ancestor, J. E. Daugherty. It is their contention that, as upon the death of the mother, in 1900, her half of the community immediately descended to her heirs, the advancements made by J. E. Daugherty, the surviving husband and father, must of necessity have been made out of his estate alone, or out of his half of the community, and that therefore the interests purchased by them are not chargeable with such advancements.

From the time of the death of Rachel Daugherty in the year 1900 up to the death of J. E. Daugherty, twenty-five years later, the estate of Rachel was held, managed, and controlled by her surviving husband, and, under the facts in this case, he became, apparently by common consent, a trustee for the benefit of her children. In a very distinct sense he was indebted to them, and, as the years went by, he advanced to each of them sums of money which they accepted as advancements to be credited against whatever further interest they might receive out of the estate. That the heirs thus considered these sums is evidenced by the fact that, when their father died, they all got together before administration began and agreed in writing not only upon the amount of money advanced to each, but also agreed that the entire sum advanced to them all came out of the common or community estate of their two parents. This agreement, it is true, was not placed of record, but it was referred to in the county probate proceedings, both at the beginning and at the end of the administration under the father's will. Some years afterward plaintiffs in error purchased two of these

interests, and they here insist, and insisted in the trial court, that they are not bound by the action of their grantors, and that nothing has been done which can possibly have the effect of denying them the one-eighteenth interest inherited by each of the two whose interests they purchased, from their deceased mother.

On its face, the argument is very plausible. But, when we come to analyze it, in all its bearings, its force is greatly reduced, if not entirely destroyed. Their purchase gave them only such interest as these two heirs possess, of course; by no sort of construction can a purchaser at a judicial sale receive more. At the time of the purchase, the official records and minutes of the probate court of the county in which the estate is situated contained recitations suggesting, at least, that these interests were chargeable with certain advances paid out of the community estate of their ancestors, and that the fact had been acknowledged by them in writing. Can a purchaser, under such circumstances, be heard to claim that he had no notice of the existence of such equities and can he be held to enjoy any greater estate than that enjoyed by the person whose interest he bought? It is a well-established principle of the law of notice that a person is presumed to know what the exercise of reasonable diligence would have disclosed, and certainly the most casual examination of this probate record in the case before us would have disclosed that those two interests in the estate were thus incumbered. Defendants in error insist that as the probate proceedings were in rem, and, as they recognized these incumbrances as a part of the probate judgments, the plaintiffs are bound by them by force of the doctrine of collateral attack. We need not go so far as that to uphold the judgment of the trial court.

■■ To our minds the reasoning of the old case of Sparks v. Spence, 40 Tex. 693, 694, as affirmed and followed in Rutherford v. Deaver, 235 S.W. 853, by our Supreme Court, is quite applicable to the case at bar. As we understand the reasoning of Judge Gould in the former case, approved by Judge Powell and the Supreme Court in the latter, it is this: When advances are made to persons entitled to receive money or property out of a community estate, such advancements are presumed, in the absence of testimony to the contrary, to have come out of such community and the burden is upon the person who asserts the contrary

to prove that such was not the case. Applying this rule to the case at bar, we find nothing in this record to indicate that such advances were not made out of the community. So far as this record shows, every cent that J. E. Daugherty advanced to his nine children was community property belonging to the estate of himself and his deceased wife, Rachel Daugherty. The very terms of his will, commanding his executors to take these advancements into consideration in distributing his estate, indicates that he regarded them as credits to the whole estate and intended to devise the estate in such a way that such advances should be accounted for in settlement with each individual devisee.

It follows that the judgment of the learned trial court should be and is, in all things, affirmed.